IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ADRIAN JONES, #309-040     * <br>     Petitioner <br>                             * <br> v.                                                             * <br> WARDEN, et al., <br>     Respondents.                  * | CIVIL NO. L-05-2547 <br> (consolidated with L-07-944) |

**MEMORANDUM**

Pending is Petitioner Adrian Jones's ("Jones") pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been fully briefed and because the papers adequately present the issues, no hearing is necessary.[1] For the reasons set forth below, the Court will, by separate order, DENY Jones's petition and DIRECT the Clerk to CLOSE the case.

**I.     BACKGROUND**

Jones was charged in the Circuit Court for Prince George's County, Maryland with attempted first degree rape and related offenses. (Docket No. 11, Ex. 1). A jury returned verdicts of guilty of attempted first degree rape, attempted second degree rape, first and third degree burglary, and second degree assault. (Id., Ex. 1 and 5). Jones was sentenced to a life term for the attempted first degree rape. All other remaining offenses merged. (Id., Ex. 1 and 6).

---

[1] See Cardwell v. Greene, 152 F.3d 331, 37-38 (1998) (overruled on other grounds) (evidentiary hearing is not required on a § 2254 petition if the record of the case conclusively shows that petitioner is entitled to no relief).
    Pending is Jones's Motion for Discovery. Docket No. 17. He asked that Respondents be compelled to produce the full transcript of the post-conviction hearing held on October 25, 2004. Respondents assert that the proceeding has not been transcribed. Docket No. 11. Because the transcript is unnecessary for a determination of this case, the Motion shall be DENIED.

The facts adduced at trial, as described by the Maryland Court of Special Appeals, were as follows:

> On the morning of May 28, 2001, the victim, sixty-one-year-old Laverne Vann, awoke to a tap on her shoulder. She had been asleep in her bed in her home in Oxen Hill, Maryland. She was expecting her grandson and his family and had left the door unlocked for their arrival. When she awoke, she saw the face of an unfamiliar male, whom she later identified as appellant. Appellant told her not to look at him and placed a pillowcase over her heard. Ms. Vann heard a ripping sound and felt the point of what she thought was a knife pressed against her neck. Appellant stated, "I bet you lock the door from now on" and then tied her hands behind her back. Appellant asked for her money, gold, and jewelry. Ms. Vann stated she did not have any. Appellant began rummaging through her room.
>
> Appellant then stated he was "going to fuck" her and wanted her "to suck [his] dick." Ms. Vann stated that she was "too old for all this stuff" and had AIDS and herpes. The two struggled, and Ms. Vann, knowing she had an older "trip bed," made it collapse. Appellant then kicked Ms. Vann in the back. Appellant pulled her up from the floor, cut the cord to the rope trying her hands, and asked for Vaseline. Appellant found beeswax in the bathroom. Ms. Vann testified:
>
>> I felt this fluttering, this rapid fire kind of sexual motion on my back and fumbling around my anus, and you know, attempting to penetrate me from the rear...
>>
>> I'm supposing he was attempting to penetrate somewhere. He was trying the anus and the vagina...
>>
>> It was unsuccessful what he was doing. But I felt a slight penetration of my rectum and I repositioned myself and moved myself and that failed.
>
> Appellant then went into the bathroom and ordered Ms. Vann into the closet. Appellant stated that he was going to take her television and cordless phone. Ms. Vann waited several minutes before exiting the closet. After walking downstairs, she noticed a long table was placed against the front door. The television, telephone, and other small items were missing.
>
> Ms. Vann gave a statement to police officer Jeffery Walters, estimating that the entire ordeal lasted 45 minutes and describing the appellant as a 25 to 35 year old man, 5-7' tall, 135-140 pounds., light to medium complexion, neat hair, a pencil thin mustache,

and a slight limp. Police Officer Meredith Bingley also met with Ms. Vann and obtained her clothing to submit for laboratory tests.

After talking to police, Ms. Vann went to Prince George's County Hospital. Kathy Murphy, a sexual assault nurse examiner, interviewed Ms. Vann.

On August 28, 2001, Officer Bingley executed a warrant to obtain oral swabs and facial and public hair samples from appellant. The officer noticed appellant had a thin mustache.

****

[At trial] Julie Kempton, accepted as an expert in DNA analysis[,] testified to the procedures she generally uses in the Prince George's County DNA Laboratory. She identified the material she tested as coming from the sexual assault examination of Ms. Vann. Ms. Kempton analyzed Ms. Vann's underwear and determined that semen was present on the garment. From the sperm contained in the semen, Ms. Klempton was able to do a DNA analysis. Ms. Kempton testified that "the semen stain in the underwear would be expected to be seen in one of 2.7 quadrillion African-Americans." Although [Jones] objected, Ms. Klempton opined that the semen in Ms. Vann's underwear was that of [Jones].

(Docket No. 11, Ex. 9, pp. 3-4).

Jones noted an appeal to the court of Special Appeals of Maryland wherein he alleged that the statements of the victim and expert opinion regarding the DNA evidence were wrongly admitted at trial. (Id., Ex. 7-9). Jones's convictions were upheld by the intermediate appellate court in an unreported opinion filed on June 17, 2003. (Id., Ex. 9). The Court of Appeals of Maryland denied Jones's request for a writ of certiorari. (Id., Ex. 10).

In July of 2002 and July of 2003, Jones filed post-conviction petitions in the Circuit Court for Prince George's County. (Id., Ex. 11 and 12). As recognized by the post-conviction court, Jones's allegations centered on ineffective assistance of counsel because counsel failed to: (i) challenge the police's authority to take him from the Prince George's County Correctional Center to the Prince George's County Police headquarters where police interviewed him concerning a burglary and rape that had occurred in the

3

county; (ii) seek the exclusion of DNA evidence obtained by the police in violation of Jones's Fourth Amendment right to be free from search and seizure when the police, against his will and without an appropriate search warrant, took a sample of saliva for DNA analysis; (iii) dispute the State's DNA evidence when it failed to provide a sufficient chain of custody; (iv) assert that the search warrant the police used to collect DNA evidence from Jones lacked probable cause and sufficient specificity, and (v) argue that the statement of the charges did not articulate a satisfactory basis for its DNA finding. (Id. Ex. 14).

On October 25, 2004, a post-conviction hearing was held before Circuit Court Judge C. Philip Nichols, Jr., who denied relief on February 4, 2005. (Id., Exs. 13 & 14). Jones filed an application for leave to appeal on February 18, 2005. (Id., Ex. 15). The Court of Special Appeals of Maryland summarily denied the application on August 10, 2005. (Id., Ex. 16). The court's mandate issues on September 13, 2005. (Id.)

On September 13, 2005,[2] (within the one-year limitation period set out under 28 U.S.C. § 2244(d)), Jones filed the instant Petition, arguing that his State convictions should be overturned. He claims that counsel was ineffective because he did not:

(i) challenge the "illegal seizure" of Jones from the detention center as well as the fruits of the "illegal arrest" that were used against him at trial;

(ii) challenge evidence that was "in violation of illegal search and seizure" when police took his saliva without his consent and used it, against him at trial;

(iii) challenge the chain of custody issue, asserting that it was "proved at trial" that the containers were opened and changed;

(iv) challenge the search warrant that the police used to collect DNA evidence from him; and

---

[2] Jones filed a second petition on April 11, 2007 which has been consolidated with this case. See Jones v. Warden, Civil Action No. L-07-944 (D. Md. 2007).

(v)     argue that the request for statement of charges and arrest warrant were issued "on erroneous foundation."

(Docket No. 1).

## II. ANALYSIS

Petitioner's claims will be addressed on the merits pursuant to the standard set out under 28 U.S.C. § 2254(d) & (e). See Woodford v. Garceau, 538 U.S. 202, 207 (2003); Beck v. Angelone, 261 F.3d 377, 380 n.3 (4th Cir. 2001). Under § 2254(d), a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

(i)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(ii)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curium). In Williams v. Taylor, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id.

at 409-410; see also Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); Booth-el v. Nuth, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings.  See Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary.  The applicant has the burden of rebutting the presumption of correctness.  A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.  See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With the aforementioned standards in mind, the Court shall examine Petitioner's claims.

### A.     Fourth Amendment Claims

The law concerning Fourth Amendment claims in federal habeas corpus proceedings is well established and familiar to this Court.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U. S. 465, 494 (1976) (footnotes omitted).

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in Stone v. Powell, *supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court.  Second, . . . when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell, supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair

6

> litigation of his Fourth Amendment claim or claims was in some way impaired.

Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978).

Jones could and did challenge through a suppression motion the validity of his transport from the Detention Center to the police station as well as the validity of the search warrant which led to the taking of the saliva sample. An evidentiary hearing was held in the circuit court and the motion was denied. (Docket No. 11, Ex. 1, 13, and 14). Jones had a full and fair opportunity to litigate the legality of the search and seizure issues in the Maryland courts. Thus, this allegation does not provide a basis for federal habeas corpus relief.

### B. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of trial counsel, Jones must show that "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland v. Washington, 466 U.S. 668, 694 (1984). With regard to the first prong of this test, this Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. All circumstances are to be considered, and this Court's scrutiny of counsel's conduct must be "highly deferential." Id. at 688-89. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Additionally, in asserting a claim of ineffective assistance of counsel in regard to a Fourth Amendment issue, Jones must establish "a meritorious Fourth Amendment issue" and that he was "denied

7

a fair trial by the gross incompetence" of his attorney.  See Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

> i.  **Claim that Counsel was Ineffective for not Challenging the "Illegal" Seizure" of Jones from the Detention Center and Fruits of the "Illegal Arrest"**

In rejecting this claim, the post conviction court found as follows:

> The Petitioner claims that Mr. Rattal should have argued that the Prince George's County police did not have authority when they took him from the Prince George's County Detention Center to the sexual assault unit of the Prince George's County Police Department to question him about a burglary and rape that had occurred in the county. The Petitioner claims that the Prince George's County Police lacked authority because they did not have an arrest warrant when they transported him. Though the Petitioner's claim specifies that the police lacked the jurisdiction to transport him from the detention center to the police department, this Court has determined that the Petitioner's claim is really an issue of whether the police had the authority to transport the Petitioner.
>
> The Petitioner was in the custody fo the State when the Prince George's County Police questioned him. The only time officers transported the Petitioner from the detention center to the Prince George's County Police Department was on the 23rd day of August 2001, when the officers were acting under the authority of a search warrant for a blood sample, saliva sample, 10 pubic hairs, and 10 pulled facial hairs. To obtain these samples it was necessary to transport he Petitioner from the detention center to the sexual assault unit of the police department. Upon arriving at the police department the officers advised the Petitioner of his rights, he waived his rights, the officers executed the search warrant, and the Petitioner denied any involvement in the rape. Furthermore, the issue of whether police had the authority to transport the Petitioner was heard by the court during a motion to suppress. The court found that the search warrant served as a legal writ to remove the Petitioner from the detention center and take him to the police department. Since this issue was raised at trial and properly decided, the first prong of *Strickland*, the "deficiency" prong, has not been satisfied with this claim.

(Docket No. 11, Ex. 14).

As properly noted by the post-conviction court, counsel did challenge the legality of Jones's transfer from the detention center to the police station during the suppression hearing. The motions court rejected counsel's argument and found that the search warrant contained sufficient probable cause, the

8

warrant was valid, and Jones's transfer from the Detention Center to the police station was proper. (Id., Ex. 2, p. 39-40). The post-conviction court's finding is supported by the record and will be upheld. 28 U.S.C. §2254(d) and (e).

> ii. **Counsel was Ineffective for Not Challenging Seizure of Saliva Evidence**
> iii. **Trial Counsel was Ineffective for Not Challenging the Search Warrant for DNA Evidence**

Jones next contends that counsel was ineffective for failing to allege at the suppression hearing that the saliva sample was obtained via an "illegal search and seizure." In a related ground, he claims that trial counsel was ineffective because he failed to challenge the search warrant used to obtain the DNA evidence. In rejecting these claims the post-conviction court stated:

> The Petitioner further argues that his counsel should have asserted that the search warrant used to collect DNA evidence lacked probable cause and insufficient specificity. The probable cause portion of this argument was reviewed at trial and resulted in a finding for the State. The Petitioner's argument that the search warrant lacked the appropriate specificity appears moot since the search warrant plainly declared that the State was entitled to collect a blood sample, saliva sample, 10 pubic hairs, and 10 pulled facial hairs. As a result, the Petitioner has not met Strickland's first prong.
>
> The Petitioner also alleges that his attorney failed to argue for the exclusion of DNA evidence that was obtained a result of the State denying the Petitioner his Fourth Amendment right to be free from search and seizure when police, against his will and without an appropriate search warrant, took a sample of his saliva for DNA analysis. The Petitioner believes that he had a right to refuse to provide the sample and the he should have been indicted or charged before the State procured any DNA evidence. The police, however, were entitled to the saliva sample based on the search warrant which not only authorized the collection of a blood sample, saliva sample, 10 pubic hairs, and 10 pulled facial hairs, but was issued by the court with sufficient probably cause. Furthermore, the court reviewed the validity of the search warrant at trial and ruled in favor of the State. Since there was more than ample probable cause for the issuance of the search warrant and the taking of the saliva sample, this claim also fails *Strickland's* "deficiency prong.

(Docket No. 11, Ex. 15, p. 4-5).

Again Jones is mistaken as to attorney's efforts. His trial counsel did in fact challenge the sufficiency of the search warrant during the suppression hearing and the court determined that the warrant was valid and also determined that obtaining the saliva sample from Jones was proper. (Id., Ex. 2, p. 2-3, 35-40). In reviewing the case, the post-conviction court found that there was "more than ample probable cause at almost every step to support and justify those actions of the police department that provided the evidence that lead to [Jones's] trial, conviction, and sentencing for attempted rape." (Id., Ex. 14, p. 6). In light of the foregoing, Jones has neither demonstrated that his attorney erred nor that he suffered any harm as a result of the alleged error. Accordingly, the post-conviction court's determination will not be disturbed.

### iv.     Trial Counsel was Ineffective for Failing to Challenge the Chain of Custody

Jones mistakenly alleges that trial counsel rendered ineffective assistance when he failed to challenge the chain of custody. He asserts that during the trial it was demonstrated that the evidence containers were opened and changed. Docket No. 1. The post-conviction court rejected Jones's contention, finding:

> The Petitioner's next assertion, that the DNA evidence was improperly handled, appears moot. His bald allegation is unsupported by the facts. The DNA test revealed that only 1 in every 1.7 quadrillion African Americans could have committed the crime. These numbers are even higher with regard to the possibility that he crime was committed by a Caucasian or Hispanic. As a result of the specificity of the DNA results, it is difficult, at least beyond a mathematical possibility, for anyone other than the Petitioner to have committed the crime. Therefore, there does not appear to be any contamination issue that could rationally be found in the Petitioner's favor, and the Petitioners' assertion fails the first prong of *Strickland*.

The trial transcript demonstrates that counsel did challenge the reliability of the DNA evidence, based on the chain of custody. Counsel cross-examined Julie Kempton, the laboratory analyst, concerning possible contamination (Docket No. 11, Ex. 4, pp 77-78) and addressed issues with the chain of custody

in his closing arguments. (Id., p. 142). That counsel's efforts to challenge the chain of custody were unavailing does not make his representation ineffective under Strickland.

> **v. Trial Counsel was Ineffective for not Challenging the Statement of Charges and Arrest Warrant.**

Jones claims that counsel was ineffective in failing to argue that the request for statement of charges and arrest warrant were issued "on erroneous foundation." Docket No. 1. In rejecting this claim, the post-conviction court found:

> The Petitioner's last challenge, that Mr. Rattal failed to argue that the statement of charges did not articulate a satisfactory basis for its DNA finding and that the resulting arrest warrant was therefore issued under an erroneous foundation is moot. There is more than ample probable cause at almost every step to support and justify those actions of the police department that provided the evidence that lead to his trial, conviction, and sentencing for attempted rape. Again, the Petitioner has not satisfied the first prong of *Strickland*.

(Docket No. 11, Ex. 14, p. 6).

The post-conviction court's findings are supported by the record. Jones was in custody on unrelated charges when he was charged with the offenses in this case. (Id., Ex. 2). Under Strickland there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The failure to make a frivolous motion or to make ethically improper arguments does not constitute unprofessional error. Moreover, making the motions would not have changed the outcome of the trial because the state trial court would have doubtless denied them. See also Horne v. Peyton, 356 F.2d 631 (4th Cir. 1966) (fact that counsel could have done more is insufficient for reversal absent any showing of harmful consequences).

**III. CONCLUSION**

For the foregoing reasons, the Court will, by separate Order, DENY Jones's § 2254 petition and DIRECT the Clerk to CLOSE the case. Should Jones choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must filed a notice of appeal with the Clerk of this Court within 30 days after the date of entry of the judgment order. Upon reviewing the notice of appeal, this Court will either issue a certificate of appealability or state why a certificate should not issue in accordance with Federal Rule of Appellate Procedure 22(b)(1). See also 28 U.S.C. § 2253(c). If this Court should deny certification, Jones may request a circuit judge of the United States Court of Appeals for the Fourth Circuit to issue the certificate.

Dated this 26th day of July, 2007.

/s/
Benson Everett Legg
Chief Judge